UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JBRICK, LLC,
                Plaintiff,

v.

CHAZAK KINDER, INC., CHAZAK
DISTRIBUTION, INC., YAACOV
SCHWARTZ, and MARAV USA LLC.

                Defendants.

**MEMORANDUM & ORDER**
21-CV-02883 (HG) (CLP)

---

**HECTOR GONZALEZ,** United States District Judge:

Plaintiff JBrick, LLC ("Plaintiff" or "JBrick") brings this action against Defendants Chazak Kinder, Inc. ("Chazak Kinder"), Chazak Distribution, Inc. ("Chazak Distribution"), Marav USA, LLC ("Bingo Wholesale"), and Yaacov Schwartz (together, "Defendants") alleging copyright infringement pursuant to 17 U.S.C. §§ 101–1511. ECF No. 46 (Second Amended Complaint).

Presently before the Court are: (i) Defendants' Motion to Strike the Opinions of Michael Pakter, and (ii) Plaintiff's Motion to Strike Certain Opinions and Testimony of Trevor McClain-Duer. ECF Nos. 91, 92. For the reasons set forth below, Defendants' Motion to Strike the Opinions of Michael Pakter is granted in part and denied in part, and Plaintiff's Motion to Strike Certain Opinions and Testimony of Trevor McClain-Duer is granted.

## BACKGROUND

The Court assumes familiarity with the facts and history of this litigation and only provides a summary of the pertinent facts and procedural history. *See JBrick, LLC v. Chazak Kinder, Inc.*, No. 21-cv-2883, 2022 WL 17177854 (E.D.N.Y. Nov. 23, 2022); *JBrick, LLC v. Chazak Kinder, Inc.*, No. 21-cv-2883, 2023 WL 6158694 (E.D.N.Y. Sept. 21, 2023).

Plaintiff alleges that JBrick was established by Yitzchok and Channie Kasowitz in 2014. ECF No. 46 at 4. Plaintiff further alleges that Mr. Kasowitz's "true passion project" was the creation of a "unique, accurately scaled, genuine LEGO®-brick interpretation" of the Second Beit Hamikdash, or Second Holy Temple ("Second Holy Temple"). ECF No. 46 at 4–5. Plaintiff alleges that in November 2018, Mr. Kasowitz met Defendant Schwartz at a convention where JBrick's Second Holy Temple set (the "Second Holy Temple Product") was "on full display." ECF No. 46 at 14. Plaintiff alleges that thereafter Defendants produced "almost an exact replica" of the Second Holy Temple Product, containing "all of the unique features that set the JBrick . . . [product] apart from its competitors." ECF No. 46 at 13. On May 21, 2021, JBrick filed a complaint asserting a claim for copyright infringement against Defendants. ECF No. 1. On April 25, 2022, Plaintiff filed its second amended complaint. ECF No. 46. On August 19, 2022, the parties completed expert discovery. ECF No. 58.

On February 20 and February 21, 2023, Defendants filed a motion to strike the opinions of Plaintiff's expert Michael Pakter and Plaintiff filed a motion to strike certain opinions of Defendants' expert Trevor McClain-Duer. ECF Nos. 91, 92. On March 20, 2023, the parties filed their oppositions. ECF Nos. 99, 100. The Court did not permit replies. *See* Text Order dated January 4, 2023.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which was further clarified by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).[1] Rule 702 provides, in pertinent part, that an expert, qualified by "knowledge, skill,

---

[1] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations and footnotes.

experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In other words, "the Court must determine:  (1) whether the witness is a qualified expert; (2) whether the opinion is based on application of reliable data and methodology to the facts of the case; and (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine an issue of fact."  *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-cv-209, 2022 WL 4357555, at *10 (E.D.N.Y. Sept. 20, 2022). "Under *Daubert*, the district court must perform the gatekeeping function to ensure that:  any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Beruashvili v. Hobart Corp.*, No. 05-cv-1646, 2010 WL 11622750, at *5 (E.D.N.Y. July 15, 2010).

## DISCUSSION

Plaintiff offers the testimony of Mr. Michael D. Pakter as an expert on damages incurred as a result of Defendants' sales of their alleged infringing product.  ECF No. 104-2 (Pakter Expert Report).  Defendants offer the testimony of Mr. Trevor McClain-Duer as a rebuttal expert on damages.  ECF No. 104-7 (McClain-Duer Expert Report).

### I.      Admissibility of Michael Pakter's Testimony

*A.  Qualifications*

Michael D. Pakter is a certified public accountant, registered and licensed in the State of Illinois, with over 40 years of experience in accounting and forensic accounting.  ECF No. 104-2 at 5 (Pakter Expert Report).  He holds a Bachelor of Commerce and a Bachelor of Accountancy from Witwatersrand University, in South Africa.  *Id.* at 41.  The American Institute of Certified

3

Public Accountants has recognized Mr. Pakter as "Certified in Financial Forensics" and as a "Chartered Global Management Accountant." *Id.* at 5. Mr. Pakter has earned several other certifications including as a "Certified Valuation Analyst" and "Master Analyst in Financial Forensics" from the National Association of Certified Valuators and Analysts, and as a "Certified Insolvency and Restructuring Advisor" from the Association of Insolvency and Restructuring Advisors. *Id.*

Mr. Pakter has over 20 years of experience in determining economic damages and performing business valuations. ECF No. 104-2 at 41. He is currently the Managing Member of Gould & Pakter Associates, LLC ("G&P"), a certified public accounting firm founded in 2004 which provides, among other things, "financial forensics, commercial litigation services, internal investigations and financial analysis of disputes; calculates lost profits, economic damages, insurance claims, and earn-outs." *Id.* at 3. Mr. Pakter has previously testified in proceedings in federal (both district and bankruptcy), and state courts where he was qualified as an expert in the field of economic damages. *Id.* at 5. G&P and Mr. Pakter were engaged by Plaintiff's counsel "to determine Plaintiff's damages assuming Defendants' liability" including Plaintiff's actual damages, and Defendants' "profits attributable to their infringement that are not taken into account in calculating JBrick's actual damages." *Id.* at 3.

Considering his significant experience in accounting and determining economic damages, and because Defendants do not dispute that Mr. Pakter is a qualified expert, this Court concludes that Mr. Pakter has the "knowledge, skill, experience, training, [and] education" required by Rule 702 to offer opinions on economic damages in this case.

*B. Reliability and Relevance*

Defendants argue that the damages calculations in Mr. Pakter's report are "based almost exclusively on speculation and not on objective, documented evidence or on any reliable methodology." ECF No. 91 at 3. Specifically, Defendants take issue with Mr. Pakter's: (i) "contention that Plaintiff would have sold an equal number of the copyrighted set as Defendants sold of the accused product"; (ii) "contention that damages would include the Temple Mount Product" and unsold inventory of the Temple Mount Product; (iii) assessment of Defendants' profits from sales of the allegedly infringing product; and (iv) suggestion that "JBrick can recover both its lost profits and a disgorgement of Defendants' profits." *See generally id.* Plaintiff contends that Mr. Pakter's opinions stem from "complex but transparent calculations that serve to assist the jury in understanding the financial issues underlying the damages asserted in this case." ECF No. 100 at 2. The Court addresses each argument in turn.

    i.    <u>The Court Denies Defendants' Motion to Strike Mr. Pakter's Opinion That Plaintiff Would Have Sold an Equal Number of its Second Holy Temple Set as Defendants Sold of the Allegedly Infringing Product</u>

In a copyright infringement case, a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Mr. Pakter opines that assuming Defendants' liability, one possible calculation for actual damages is "JBrick's lost profits for its Holy Temple product, under calculations that assume Plaintiff would have made all of, or various fractions of, the infringing sales made by Defendants." ECF No. 104-2 at 16. Defendants argue that this calculation is speculative because it ignores "the gross disparity in the sale price of the respective products ($613 [for Plaintiff's Second Holy Temple Product] . . . versus $60 [for Defendants'

5

allegedly infringing product]).” ECF No. 91 at 4 ("A plaintiff is not entitled to lost profits that it might have earned, where an 'identical sale' theory is assumed without accounting for variables such as a difference in price, because such a measure is based in speculation.").

Defendants rely on *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 775 F. Supp. 544 (E.D.N.Y. 1991), *aff'd in part, vacated in part on other grounds*, 982 F. 2d 693 (2d Cir. 1992), for the proposition that Mr. Pakter's opinion is untenable because "there was no evidence that customers of the cheaper product would have paid a higher price." ECF No. 91 at 7. While true that the court in *Comput. Assocs. Int'l* rejected plaintiff's expert's opinion that plaintiff would have sold the same amount as defendant, that case was tried without a jury, and the Court appointed its own expert pursuant to Rule 706 of the Federal Rules of Evidence to come to a decision about the plaintiff's actual damages. *See Comput. Assocs. Int'l*, 775 F. Supp. at 549. Reasonable minds can disagree about whether Plaintiff had the capability to produce, and whether customers would have bought, Plaintiff's Second Holy Temple Product at the same rate as Defendants' allegedly infringing product. However, disagreement among the parties is not a basis to exclude Mr. Pakter's opinion. "[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison. Other contentions that the assumptions are unfounded go to the *weight*, not the admissibility, of the testimony." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213–14 (2d Cir. 2009) (emphasis added). Nothing suggests that Mr. Pakter's conclusion that Plaintiff would have sold an equal number of its Second Holy Temple as Defendants is so unrealistic or contradictory as to suggest bad faith. The Court therefore concludes that Mr. Pakter's opinion is reliable, meaning that it is "based on sufficient facts and data," "is the product of reliable principles and methods,"

6

and has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The parties may disagree as to his conclusion, but ultimately the jury is the judge of actual damages and is responsible for assessing what weight to give Mr. Pakter's testimony. *See Daubert*, 509 U.S. at 594–95 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) ("If an expert's testimony lies within the range where experts might reasonably differ, the jury, and not the trial court, should decide among the conflicting views of different experts."). Accordingly, the Court denies Defendants' motion to strike Mr. Pakter's opinion that Plaintiff would have sold an equal number of its Second Holy Temple Product as Defendants sold of the allegedly infringing product.

  ii.  The Court Grants Defendants' Motion to Strike Mr. Pakter's Opinion Regarding Lost Profits for the Temple Mount Product

Defendants argue that Mr. Pakter incorrectly opines that "JBrick is entitled to a calculation of damages that relate to its Temple Mount Product, a product that is wholly unrelated" to the instant copyright infringement action and "not relevant for the purposes of damages." ECF No. 91 at 10. Plaintiff contends that its Second Holy Temple Product, and a second product (the "Temple Mount Product") are "directly related," and, accordingly, Mr. Pakter can consider lost sales of the Temple Mount Product in his calculation of Plaintiff's damages. ECF No. 100 at 1; ECF No. 104-2 at 14 ("[T]he lost sales of [JBrick's Second Holy Temple Product] that were caused by the infringing product also caused JBrick to lose out on

7

sales of its companion Temple Mount [Product], which expands upon and adds yet further educational value to the JBrick [Second Holy Temple Product].").

As discussed previously, section 504 of the Copyright Act provides for recovery of "actual damages suffered by [the plaintiff] as a result of the infringement." 17 U.S.C. § 504(b). "To prove the amount of damages suffered as a result of the infringement, the copyright owner may rely on indirect evidence. For example, the copyright owner may recover the profits which it might have earned were it not for the defendant's infringement, and is competent to testify as to the extent to which the copyright's value has been injured or destroyed by defendant's action." *Sunset Lamp Corp. v. Alsy Corp.*, 749 F. Supp. 520, 522 (S.D.N.Y 1990). However, "damages may be recovered only if there is a necessary, immediate and direct causal connection between the wrongdoing and the damages." *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir. 1977). Thus, courts must ensure that actual damages are not speculative. *See Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir. 1985). Plaintiff is seeking as actual damages for infringement, lost sales on a *non-infringed* item—the Temple Mount Product—as permitted by law. *Sunset Lamp*, 749 F. Supp. at 522–24; *see also Cohen v. United States*, 100 Fed. Cl. 461, 481 (Fed. Cl. 2011) ("Indirect losses may include the value of lost sales on non-infringed works that are marketed as part of the line of merchandise that includes a work as to which copyright infringement is proven by the plaintiff."). However, Plaintiff has the burden of "prov[ing] the connection between the infringement and the alleged damages" and must demonstrate "by credible evidence a relationship between sales of non-infringed items and sales of the infringed [item], and further show which sales were prevented as a result of [D]efendants' infringement." *Sunset Lamp*, 749 F. Supp. at 523–25.

In calculating Plaintiff's actual damages, Mr. Pakter assumed that "Plaintiff's lost sales of its Temple Mount [P]roduct would be proportional to its lost sales of its [Second] Holy Temple [P]roduct." ECF No. 104-2 at 15.  As evidence of a relationship between sales of the Temple Mount Product and sales of the Second Holy Temple Product, Plaintiff argues that the Temple Mount Product "expands upon" the Second Holy Temple Product and was created as an "intended companion set." ECF No. 100 at 11–12.  The Court finds that while such a damages theory is not inconceivable, Plaintiff has failed to present any credible evidence of a relationship between *sales* of the two products.  Plaintiff emphasizes that the Temple Mount Product can be placed on the Second Holy Temple Product to "creat[e] a cohesive product set and educational tool" and submits images showing how the two products can be combined, but does not put forth sufficient evidence demonstrating a connection "between *sales* of the [Temple Mount Product] and sales of the [Second Holy Temple Product]" nor does it demonstrate specifically "which sales were prevented as a result of [D]efendants' infringement." *Sunset Lamp*, 749 F. Supp. at 524–25.  "[C]opyright laws do not allow speculative recovery." *Mager v. Brand New Sch.*, No. 03-cv-8552, 2004 WL 2413978, at *4 (S.D.N.Y. Oct. 28, 2004).  Plaintiff, however, has not produced, for example, evidence of lost customers or cancelled orders for the Temple Mount Product as a result of the alleged infringement. *Sunset Lamp*, 749 F. Supp. at 524 n.2 (stating that the plaintiff "may produce testimony from a purchaser at a department store that it canceled an order for many items upon becoming aware that [defendant] produced an item nearly identical to the [infringed product]").  Plaintiff instead simply states in conclusory fashion that "for each [Second] Holy Temple [Product] that JBrick did not sell on account of Defendants' infringement, JBrick necessarily *also* could not have sold its Temple Mount [P]roduct." ECF No. 100 at 12 (emphasis in original).  Plaintiff has not met its burden to prove causation between the alleged

9

infringement and lost sales of the Temple Mount Product, and therefore the Court grants Defendants' motion to strike Mr. Pakter's opinion with regard to lost profits for non-infringed products. *Cohen*, 100 Fed. Cl. at 482 (granting summary judgment in favor of defendants and finding that "conclusory statements—resting on assumptions and containing no evidence of causation—are insufficient" to support damages theory based on lost profits for non-infringed works).

      iii.    The Court Denies Defendants' Motion to Strike Mr. Pakter's Opinion Regarding His Assessment of Lost Profits for the Second Holy Temple Product

Defendants argue that Mr. Pakter does not "perform a reliable calculation of [Defendants'] profits" because he utilizes a "per unit cost" figure and "fails to account for the total loss of 300 products" donated by Defendants to charity. ECF No. 91 at 12. Plaintiff contends that Mr. Pakter's methodology is reliable and that the dispute between the parties boils down to "whether profits and costs must be calculated on a per-unit bought-and-sold basis, or on the basis of all products manufactured at one time, and how the defendant decided to dispose of . . . those products." ECF No. 100 at 14. While Defendants' criticisms may very well be valid, the fact that the parties disagree as to what methodology is the most appropriate to use to calculate profits, does not mean that Mr. Pakter's chosen methodology is unreliable.

In order to calculate profits, Mr. Pakter uses the per-unit cost of the alleged infringing product and then subtracts that per-unit cost from the price of each unit sold.[2] *See* ECF No. 104-2 at 30 (Schedule 3.3 Summary of Defendants' Profits). In doing so, Mr. Pakter includes 300 units of the alleged infringing product that were donated to charity. *Id.* Defendants argue that

---

[2]    Defendants sold the alleged infringing product at different prices. *See e.g.,* ECF No. 104-2 at 30 (showing that Defendants sold 673 units at $61.00 and 392 units to reseller Bingo Wholesale at $44.99).

the inclusion of the 300 donated units renders Mr. Pakter's profits calculation unreliable but offer no authority for their view that Mr. Pakter's methodology is incorrect. ECF No. 91 at 12. "If an expert's testimony lies within the range where experts might reasonably differ, the jury, and not the trial court, should decide among the conflicting views of different experts." *In re Fosamax*, 645 F. Supp. 2d at 173. "Absent a showing that [Mr. Pakter's] opinion is speculative or otherwise inherently unreliable, Defendants' criticisms of [Mr. Pakter's] methodology and assumptions go to the *weight*—not its admissibility." *Abbott Labs v. Adelphia Supply USA*, No. 15-cv-5826, 2019 WL 5696148, at *47 (E.D.N.Y. Sept. 30, 2019) (emphasis added) ("The Court is not persuaded that [the expert's] damages analysis is based on a methodology simply inadequate to support the conclusions reached, or that his assumptions are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison . . . . [The expert's] methodology of determining lost profits . . . falls within accepted techniques."); *Zerega Ave.*, 571 F.3d at 213–14 ("[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.").

    iv.    <u>The Court Grants Defendants' Motion to Strike Mr. Pakter's Opinion That JBrick Can Recover Both Its Lost Profits and a Disgorgement of Defendants' Profits</u>

Defendants argue that Mr. Pakter improperly opines that "Plaintiff should be entitled to profits from Chazak's downstream distributors." ECF No. 91 at 13. Defendants further contend that Mr. Pakter's opinion "is based [o]n the idea that Plaintiff not only would be able to recover for Chazak's alleged infringement but also would be able to recover on downstream profits, based on the same alleged infringement of the same, single product." *Id.* Plaintiff responds that it "should not be forced to sue 150 distributors directly downstream from [Mr. Schwartz], the defendant who devised the infringing scheme, merely to obtain all of the profits earned by those

11

infringers." ECF No. 100 at 15. Plaintiff further contends that it "instructed Mr. Pakter to compute an estimate of the profits earned by downstream distributors . . . [but] [i]f the law does not allow JBrick to recover . . . in this way, that is not a basis to exclude all of Mr. Pakter's opinions as unreliable." *Id.*

"Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable. Under elementary principles of tort law a plaintiff is entitled to only one recovery for a wrong. . . . [T]he Copyright Act allows only a single recovery for a single sale; where multiple defendants are all involved with sales . . . their liability is joint and several and recovering from one reduces the liability of the others." *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972); *see also Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 769 (S.D.N.Y. 1988) ("Where two or more persons join in or contribute to a single infringement, they are all jointly and severally liable but in such circumstances in a single infringement action there is but a single set of statutory damages; . . . the Copyright Act allows only a single recovery for a single sale."). Accordingly, Plaintiff cannot recover twice (from both Defendants, and downstream distributors) for the sale of the same unit. Thus, the Court finds that Mr. Pakter's summary of damages cannot include both distributors' profits and Defendants' disgorgement. *See* ECF No. 104-2 (Schedule 1 Summary of Damages).

## II. Admissibility of Trevor McClain-Duer's Testimony

Plaintiff seeks exclusion of certain opinions and testimony of Mr. McClain-Duer on the basis that he is not qualified to opine on: (i) the size of the market for JBrick's Second Holy Temple Product; (ii) "price-point comparisons" of the Second Holy Temple Product; and (iii) JBrick's manufacturing capabilities. *See generally* ECF No. 93 (Plaintiff's Motion to Strike).

Defendants respond that Mr. McClain-Duer is a rebuttal expert, who is solely identifying deficiencies in Mr. Pakter's report—namely, Plaintiff's failure to establish "by competent evidence what the market" for the Second Holy Temple Product is, and what its manufacturing capabilities are.  ECF No. 99 at 3 (Defendants' Opposition to Plaintiff's Motion to Strike).

"The first prong of the Court's [*Daubert*] analysis focuses on the witness's qualifications to serve as an expert." *Fantasia Distrib., Inc. v. Cool Clouds Distrib., Inc.*, No. 20-cv-2378, 2023 WL 6136628, at *3 (E.D.N.Y. Sept. 20, 2023).  "A witness must demonstrate their knowledge, skill, experience training, or education in order to qualify as an expert in the relevant subject matter." *Id.* "Even if a court determines a witness to be qualified to offer an expert opinion, however, a witness's qualification on areas of knowledge by no means qualifies him to express opinions outside of this field." *Id.* "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

Trevor McClain-Duer is a certified public accountant, registered and licensed in the State of Illinois.  ECF No. 104-7 at 8 (McClain-Duer Expert Report).  He holds a Bachelor of Business Administration from the University of Notre Dame and a Master's Degree in Accounting from Ohio State University.  *Id.*  He is a Chartered Financial Analyst with over 15 years of experience in valuation and determining economic damages.  *Id.*  He is currently the Director of Valuation at Caliber Advisors, Inc., an expert valuation and economic consulting firm.  *Id.*  Mr. McClain-Duer was engaged by Defendants to complete a review of Mr. Pakter's Expert Report and to "calculate[] the profits earned by Defendants for their sales of the allegedly infringing product."  *Id.* at 2.  Considering his significant experience in providing valuations and determining

13

economic damages, the Court concludes that Mr. McClain-Duer has the "knowledge, skill, experience, training, [and] education" required by Rule 702 to offer opinions on economic damages in this case. Neither he, nor Defendants, however, provide any basis from which the Court can conclude that Mr. McClain-Duer possesses the requisite knowledge, education, experience, or skills to offer expert opinions on the size of the market for the Second Holy Temple Product, possible price-point comparisons for the Second Holy Temple Product or JBrick's manufacturing capabilities.

"[A]n expert qualified in one subject matter [here, economic damages] does not thereby become an expert for all purposes." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015). While Mr. McClain-Duer can identify deficiencies in Mr. Pakter's report, *see* ECF No. 104-7 at 3 (McClain-Duer Report), he cannot take it a step further and opine that "[b]ased on [research indicating that Lego branded sets from popular movies and tv shows . . . sell for far less] . . . there *does not seem to be a large enough market* for the Temple product."). *Id.* (emphasis added). Similarly, while Mr. McClain-Duer can point out that "Mr. Pakter's calculations assume Plaintiff could have produced and sold over 15x the number of the sets he actually sold during the same time period," he is not qualified to opine that "Plaintiff [does not have] the product manufacturing capabilities or capacity to accomplish or handle such a large increase in sales" because he has not demonstrated expertise in the field more closely aligned with this opinion (*i.e.*, industrial engineering). *Id.* "[W]here an expert is admitted under Rule 702 and then purports to offer opinions beyond the scope of his expertise, courts strike the extraneous testimony, as the admission of an expert does not provide that individual with *carte blanche* to opine on every issue in the case." *Davis v. Carroll*, 937 F. Supp. 2d 390, 413

14

(S.D.N.Y. 2013) (emphasis in original). "Such testimony amounts to nothing more than advocacy from the witness stand." *Washington*, 105 F. Supp. 3d at 305.

Accordingly, the Court excludes the portions of Mr. Duer-McClain's report and testimony that purport to describe the size of the market for JBrick's Second Holy Temple Product, "price-point comparisons" of the Second Holy Temple Product, and JBrick's manufacturing capabilities.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Strike the Opinions of Michael Pakter, and GRANTS Plaintiff's Motion to Strike Certain Opinions and Testimony of Trevor McClain-Duer. The parties are hereby ordered to file a joint pretrial order in accordance with Section VI.B of the Court's Individual Practices by October 30, 2023.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 28, 2023